UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
KRISTINA S. HEUSER,

                Plaintiff,                Case No. 21-cv-2018

   - against -                           **COMPLAINT**

CITY OF GLEN COVE and
RICHARD J. MCCORD,                    JURY TRIAL DEMANDED

                Defendants.
--------------------------------------------------X

Plaintiff hereby alleges and complains of defendants as follows:

## I.    INTRODUCTION

1. Plaintiff is an attorney but brings this action *pro se* against her former employer, the City of Glen Cove, for whom she was both employed part-time as the Deputy City Attorney and simultaneously paid on a contractual basis to run the Teen Court program at the direction and under the oversight of City Court Judge, Richard J. McCord. As will be further described herein below, when plaintiff refused to bend to the political will of the Judge, he took steps to ostracize, humiliate, and embarrass her in Court, denigrated her to her colleagues, brought about a reduction in her hours as Deputy City Attorney and her termination as Teen Court Coordinator, banned her from appearing in Court, thereby causing her to lose all of her hourly income from the City, constructively discharging her. Though plaintiff complained to City officials regarding her treatment by Defendant McCord and they were fully aware of the harassment and discrimination, City officials took no action to intervene on plaintiff's behalf and, in a sense, acted as a co-conspirator (or at least willing participant) in Defendant McCord's heavy-handed bullying campaign. Also alleged is disparate pay and treatment on the basis of plaintiff's gender. This action

is brought to redress those wrongs and hold those responsible accountable for their actions in hopes that no others will be similarly victimized.

## II. JURISDICTION AND VENUE

2. Jurisdiction is proper in the United States District Court pursuant to 28 U.S.C. §1331 because this case arises under the Constitution and laws of the United States. This Court has the authority to exercise supplemental jurisdiction over the pendant state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391 based upon Defendants' residence/location and the location where the events giving rise to this complaint took place.

## III. PARTIES

4. Plaintiff KRISTINA S. HEUSER (hereinafter "plaintiff") is an attorney duly admitted to the bar of the State of New York. Plaintiff is a former resident of the City of Glen Cove, State of New York and former member of the Glen Cove Republican Committee. Plaintiff is a woman, unmarried, and mother of two.

5. Defendant CITY OF GLEN COVE (hereinafter "Defendant City") is a municipal corporation duly organized pursuant to the laws of the State of New York.

6. Defendant Richard J. McCord (hereinafter "Defendant McCord") is an attorney, bankruptcy trustee in the Eastern District of New York, and part-time judge in the Glen Cove City Court.

### III.     RELEVANT FACTS

7. In or around the summer of 2013, Defendant McCord approached plaintiff and asked her to serve as coordinator of his Teen Court program. Plaintiff agreed and began serving in that role late that summer/early fall.

8. Plaintiff served as Deputy City Attorney for the City of Glen Cove from January 2014 through approximately July 2015 and again from in or about March 2016 through June 2019.

9. The period of time that spanned 2015 to 2016 that plaintiff was not Deputy City Attorney, she had resigned to run for a position on the Glen Cove City Council.

10. At the time of her constructive termination, plaintiff was earning $70 per hour and working approximately 20 hours per week as Deputy City Attorney.

11. She earned additional compensation as an independent contractor for her role as Teen Court Coordinator.

12. Pursuant to the Glen Cove City Charter, the Deputy City Attorney is appointed by a majority of the Glen Cove City Council for a one-year term.

13. From 2014 through 2018, Glen Cove City Court was in session every Tuesday and Wednesday, other than the occasions on which the judge was away or it was a court holiday.

14. Wednesdays were typically only a morning session while Tuesdays were typically morning and afternoon sessions.

15. Defendant McCord typically presided over the Tuesday sessions and a different judge presided over Wednesday sessions.

16. Plaintiff had many successes in court and achievements as Deputy City Attorney. Both judges routinely complimented her, as did her superiors and other City officials.

17. Things changed dramatically in Summer 2018.

18. At that time, Defendant McCord was seeking re-election to his position as Glen Cove City Court Judge. The term for that position is six years. Defendant McCord is a registered Republican.

19. Plaintiff was a member of the Glen Cove Republican Committee. Committee members typically carry designating petitions door-to-door each election season to gather the necessary signatures to allow for placement of the respective candidates' names on the ballot.

20. Due to the fact that Defendant McCord had worked (through his family members and other proxies) to gather petitions and garner support generally for candidates that challenged the slate of candidates that plaintiff ran on in 2014 and Defendant McCord's continued lack of support for the Mayor who selected plaintiff for her position, plaintiff chose not to circulate petitions bearing the name of Defendant McCord. Plaintiff also did not sign Defendant McCord's petition.

21. Upon information and belief, Defendant McCord became aware of plaintiff's unwillingness to carry and sign his petitions.

22. Thereafter, on a Tuesday in or around June 2018, during court, while plaintiff was seated in the jury box and Defendant McCord was on the bench seated less than ten feet away from plaintiff, Defendant McCord summoned another attorney over to him and, upon information and belief, directed that attorney to present plaintiff with a designating

petition with Defendant McCord's name on it and request that plaintiff sign it right there in the courtroom as Defendant McCord looked on.

23. The attorney them immediately came and sat beside plaintiff in the jury box and presented her with designating petitions, one of which had Defendant McCord's name at the top.

24. Plaintiff looked at the petitions, saw that one was for Defendant McCord, and responded to the attorney, "I have to think about it". Plaintiff then handed the petitions back to the attorney.

25. The attorney spoke sternly to plaintiff and said that she was being "stupid" by not signing, and that she was "making a career decision".

26. The attorney told plaintiff that Defendant McCord directed him to present her with the petition and was watching.

27. From that incident forward, through the date of her constructed termination, plaintiff was maligned, attacked, and marginalized by Defendant McCord and his Chief Clerk.

28. The first memorable change came almost immediately thereafter when Defendant McCord suddenly took issue with the City's long-standing practice of how it entered into dispositions with defendants charged with building and housing code violations. On or about July 10, 2018, Judge McCord challenged plaintiff in open court on the record about this practice. Specifically, Defendant McCord said that the practice was unconstitutional (which it clearly was not) and he was not going to honor the City's Memoranda of Conditional Plea Bargains, even those that were already signed and so-ordered.

29. Around that same time, the new (2018-2019) Teen Court grant documents were being received from New York State. The prior year, which was the first year the program had

received a grant since plaintiff had become involved with the program, plaintiff was the primary person who handled all of the administrative paperwork on behalf of Defendant City to administer the grant (everything was signed off on by the City Attorney, but plaintiff did the work of preparing the documents). Plaintiff proceeded to do the same for the 2018-2019 grant.

30. During this process, plaintiff received an e-mail from the person overseeing the grant on behalf of the NYS Division of Criminal Justice Services. The e-mail stated that the sender would be in the area and would like to meet with plaintiff and her boss, the City Attorney. Plaintiff forwarded the e-mail to the City Attorney and sought his availability.

31. Having not heard back from the City Attorney, plaintiff responded to the e-mail and told the State representative that she was still awaiting a return email from her boss regarding his availability. The representative responded that Defendant McCord had reached out to her directly and set up the meeting.

32. The next time plaintiff appeared in City Court, she told Defendant McCord about the communication. Defendant McCord told plaintiff that her presence at the meeting was not needed, which was the first indication that Defendant McCord was pushing plaintiff out of her role as Teen Court coordinator since he always included her in all meetings concerning the program.

33. Without ever actually telling plaintiff, Defendant McCord selected the attorney who had presented plaintiff with the petitions at Defendant McCord's request to serve as Teen Court coordinator in place of plaintiff.

34. Plaintiff learned this from other sources, such as the high school teacher who was the Teen Court liaison on behalf of the School District.

35. When plaintiff learned she was being replaced as Teen Court coordinator, she reminded the City Attorney that she was still owed money for services already rendered as Teen Court coordinator. Specifically. the initial grant ran from April 1, 2017 through March 31, 2018. Plaintiff had served as Teen Court coordinator through the conclusion of the academic year (end of June 2018). Thus, she had yet to be paid for the period April 1, 2018 through June 30, 2018 (the grant was paid quarterly), which would be covered under the new grant.

36. A dispute regarding these funds ensued. Upon information and belief, Defendant McCord was directing the City Attorney not to pay the funds to plaintiff. The City of Glen Cove was the grant administrator, but the City Attorney told plaintiff that the City of Glen Cove would no longer be administering the grant and that she should talk to the Glen Cove School District, which was set to take over as grant administrator.

37. In an effort to resolve the dispute, a meeting was held at a local diner. That meeting was attended by plaintiff, Defendant McCord, the Chief Clerk of the Glen Cove City Court, and the Glen Cove Republican Executive Leader at the time.

38. After a very long and emotional discussion, the meeting concluded with plaintiff agreeing to accept a reduced payment amount and Defendant McCord saying that he would talk with the representative from Department of Criminal Justice Services ("DCJS") to facilitate the payment of those funds to plainitff.

39. Defendant McCord wanted plaintiff to say that if she received the payment, she would not pursue any further action (i.e., writing letters, telling other elected officials and party members, etc.). Plaintiff was clear to say that the conditions of a full resolution were 1) payment of the funds owed to her AND 2) for the retaliatory actions against her to cease.

40. Even though Defendant McCord tried to paint a picture that it was DCJS that decides if plaintiff should be paid out of the grant funds, in fact DCJS disburses the grant funds and the grant administrator – in this case the City of Glen Cove – determines the allocation of those funds.

41. Ultimately, the City of Glen Cove did pay the funds owed (the reduced amount) to plaintiff. That was not due to any acquiescence on the part of Defendant McCord. Rather, the payment came about as a result of plaintiff going directly to the City's finance department, proving she was owed the funds, and demanding payment.

42. Around the same time that the dispute regarding the payment of the Teen Court compensation to plaintiff was unfolding and plaintiff was being replaced as Teen Court coordinator, Defendant McCord was simultaneously retaliating against plaintiff in her role as Deputy City Attorney.

43. Specifically, whereas at the outset of plaintiff's tenure as Deputy City Attorney Defendant McCord insisted that plaintiff be present in court for the entire court session, at this time Defendant McCord began directing his clerk to call all cases being handled by plaintiff at the beginning of the Court session.

44. After the City cases were completed, Defendant McCord would say to plaintiff "City, you're excused." This also marked a change because Defendant McCord no longer addressed plaintiff by name.

45. Plaintiff was informed by an attorney who regularly appeared in the City Court that Defendant McCord had bragged to him that he was cutting plaintiff's hours.

46. Plaintiff was informed by yet another attorney that upon kicking plaintiff out of the courtroom, Defendant McCord directed his Chief Clerk to write down exactly what time plaintiff left the courtroom.

47. Plaintiff was subsequently informed by the City Comptroller that the Chief Clerk called the Comptroller and said that Defendant McCord wanted copies of all plaintiff's timesheets for a specified period of time. The Comptroller directed the Chief Clerk to submit the request through the proper channels (i.e., FOIL).

48. Sometime thereafter, the City Attorney retrieved plaintiff's timesheets and, upon information and belief, turned them over to Defendant McCord.

49. Even though this was likely an attempted scheme by Defendant McCord to bring harm to plaintiff in connection with her employment, it failed because plaintiff always kept and submitted accurate time records.

50. Upon information and belief, Defendant McCord demanded of the Mayor (of the City of Glen Cove), the City Attorney, and the Glen Cove Republican leader at the time that plaintiff be fired.

51. When January neared (the time for annual reappointments), Defendant McCord also requested/demanded that plaintiff not be reappointed to her position.

52. When those plots did not work to oust plaintiff from her City employment, Defendant McCord took a new approach. He transferred all City cases to Wednesdays, except for those handled by the attorney who had presented plaintiff with the petitions (those he retained on his Tuesday calendar).

53. To achieve this, Defendant McCord (if not personally, then through his court staff) ordered the Glen Cove Police Department to make desk appearance tickets issued for

City Code violations returnable on Wednesdays (rather than Tuesdays, which was the day they had historically been returnable).

54. When residents appeared in court on Tuesdays to dispute parking tickets, they were directed to return on Wednesday and that parking tickets were now only being heard on Wednesdays.

55. By doing this, Defendant McCord effectively cut plaintiff's hours with the City in half. That is how things continued through the end of 2018.

56. The City's associate judge presided over the court on Wednesdays, but his term expired at the end of 2018 and no new judge was appointed (during the time period relevant to this complaint). Defendant McCord covered approximately one Wednesday thereafter, but then there was no court on Wednesdays for quite some time. This relegated plaintiff to not going to court at all and not knowing what was happening with the City cases.

57. Plaintiff regularly asked the City Attorney what was happening with the cases, and the City Attorney would tell her different things to keep her at bay, such as that a lot of cases had to be dismissed due to "standards and goals" imposed by the County's the new administrative judge or that there was no City calendar and all City cases were being held in abeyance until a new judge was appointed.

58. When plaintiff asked the City Attorney what was happening with appearance tickets, parking tickets, etc. (i.e., things that came up every week), he was equally evasive and generally responded "I don't know".

59. Upon information and belief, the City Attorney, a man, was actually handling those matters in lieu of the Deputy City Attorney and being paid over twice (nearly three times) the rate of pay plaintiff was paid for doing the same work.

60. On one occasion during that period of time, however, plaintiff was notified by one of the court clerks that a court date had been assigned to a dangerous dog complaint that plaintiff had assisted a resident in filing. Defendant McCord had always required that the Deputy City Attorney assist residents in this manner and appear in court with them to assist in the process. Plaintiff appeared in court on that day, a Tuesday.

61. Upon arrival that morning, plaintiff proceeded to conference City cases in the conference room in the hall outside of the courtroom prior to the court session beginning. That was her normal routine before Defendants began pushing her out of her role as Deputy City Attorney.

62. Upon information and belief, Defendant McCord became aware of plaintiff's presence and directed (through his chief clerk) the court officers and other court personnel to not allow plaintiff to enter the courtroom. The Chief Clerk also contacted the City Attorney, who subsequently (hurriedly) arrived at court and advised plaintiff that she was not permitted to enter the courtroom based upon the directive of Defendant McCord. The City Attorney told plaintiff to continue conferencing cases in the hallway, pass the information to the City Attorney, and the City Attorney would handle all conferences and dispositions on the record.

63. This was completely humiliating and demoralizing to plaintiff, and entirely undeserved.

64. Sometime thereafter, a Village Justice from a neighboring municipality was assigned to cover the Wednesday calendar of the Glen Cove City Court. Finally, after approximately five months, plaintiff was once again allowed to appear in court…or so she thought.

65. Plaintiff went to court that first Wednesday after the new judge was assigned and took her seat at the desk where she always sat on Wednesdays. Defendant McCord then

entered the courtroom and shouted, "clear the well". This was clearly directed at plaintiff as she was the only person in the well. Plaintiff stood up and went to sit in the portion of the courtroom where the public sits. This was another example of Defendant McCord taking any and every opportunity to humiliate plaintiff and exert his power over her.

66. Plaintiff endured daily humiliation and denigration of this nature every time she appeared before Defendant McCord from the summer through her constructive termination.

67. Other attorneys noticed this and would often make remarks to plaintiff, asking her what she did to anger Defendant McCord, etc. The shift in his demeanor towards and treatment of plaintiff was apparent.

68. Plaintiff was rendered unable to do her job. Though she had the sympathy of many of her co-workers, but sadly no City employee with the authority (and, frankly, obligation) to intervene on her behalf was willing to stand up to Defendant McCord. His ruthless and vindictive nature was well known by all.

69. After hanging in for a long time, having had her position effectively eliminated, feeling helpless, overcome with stress and sheer emotional exhaustion, plaintiff eventually resigned her position effective June 2019.

70. Thereafter, the City Attorney offered plaintiff to continue working on a contractual basis on some litigation she had been handling on the City's behalf prior to her constructive discharge. Plaintiff submitted a retainer agreement to the City at the City Attorney's request.

71. Plaintiff was later informed by the City Attorney that the City elected not to retain plaintiff.

72. Plaintiff filed a complaint of discrimination based on sex/gender and retaliation with the New York State Division of Human Rights.

73. The New York State Division of Human Rights relied upon the position statement provided by the City of Glen Cove which claimed, in sum and substance, that Defendant McCord was solely responsible for all of the treatment endured by plaintiff in the context of her employment, including her being disallowed from appearing in court and her reduction in hours and elimination of her duties as Deputy City Attorney. The decision of the Division of Human Rights and the position statement of the City of Glen Cove are annexed hereto as Exhibits B and C, respectively.

74. The United States Equal Employment Opportunity Commission adopted the finding of the New York State Division of Human Rights and issued a Right-to-Sue letter dated January 13, 2021, which is annexed hereto as Exhibit A.

75. As a direct result of her loss of income, and, in particular the loss of the Teen Court income, plaintiff was unable to purchase a home she was in contract to purchase at the time of the termination of her contractual and other employment with Defendant City.

76. This was a devastating blow to plaintiff and her children, who then were without permanent housing for a period of time and forced to relocate out of the community altogether.

## IV. CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
(against Defendant City of Glen Cove only)
TITLE VII – DISCRIMINATION IN EMPLOYMENT BASED UPON SEX/GENDER

77. Plaintiff repeats and realleges all of the allegations set forth in paragraphs 1 through 76 above as though fully set forth herein.

78. Even though this point was lost on the New York State Division of Human Rights, Defendant City of Glen Cove was plaintiff's employer.

79. As such, Defendant City of Glen Cove had an obligation to protect plaintiff from a hostile work environment, discrimination in the workplace, and retaliation.

80. This obligation existed irrespective of whether the unlawful acts were perpetrated against her directly by the City of Glen Cove or indirectly by a third party during the course and in the context of her employment.

81. Plaintiff repeatedly complained to her male supervisor about the treatment she was being made to endure, which he was fully aware of even without her complaints, and she also complained to other City officials including the Mayor about being excluded from Court and disallowed from doing her job.

82. In spite of her repeated complaints, Defendant City of Glen Cove took no action on plaintiff's behalf.

83. Upon information and belief, Defendants would not have treated plaintiff this way if she were not a woman and, in particular, an unmarried woman.

84. Further, plaintiff was the only female attorney employed – either as an employee or on a contractual basis – by the City of Glen Cove.

85. Plaintiff was also the lowest paid attorney of any attorney employed or contracted with by the City of Glen Cove.

86. Upon information and belief, all other attorneys (even an attorney who did exactly the same job as plaintiff when she/the City Attorney were conflicted out of certain matters) were paid an hourly rate ranging from $195 to $225 per hour, while plaintiff was paid at her highest rate of pay an hourly rate of $70 per hour.

87. Plaintiff was also denied contractual work with the City – for which she requested to be paid $195 per hour – in favor of a male attorney at a higher hourly rate, even though plaintiff was better qualified to do the work and had already been working on the matter (so was familiar with the litigation) while a City employee.

### AS AND FOR A SECOND CAUSE OF ACTION
### FIRST AMENDMENT RETALIATION

88. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 76 as though fully set forth herein.

89. Plaintiff chose to support certain political candidates and not to support others by soliciting signatures on certain designating petitions and not on others.

90. This is form of political speech or expression, which is a right protected by the First Amendment to the United States Constitution.

91. In retaliation for plaintiff exercising that right in the manner described hereinabove, defendants conspired together to retaliate against plaintiff in the manner also described hereinabove.

92. In addition to punishing plaintiff for exercising her right to political expression, defendants took these actions against plaintiff to make an example of her and chill similar

expression by other members of the Glen Cove Republican Committee who shared her views.

AS AND FOR A THIRD CAUSE OF ACTION
VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW

93. Plaintiff repeats and realleges all of the allegations set forth in paragraphs 1 through 87 above as though fully set forth herein.

94. Defendants created and condoned a hostile work environment for plaintiff.

AS AND FOR A FOURTH CAUSE OF ACTION
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(against Defendant McCord)

95. Plaintiff repeats and realleges all of the allegations set forth in paragraphs 1 through 92 above as though fully set forth herein.

96. Due to Defendant McCord's treatment of plaintiff described hereinabove, plaintiff was routinely humiliated in front of her colleagues, often cried at work in front of her colleagues and superior, and was subjected to extreme emotional distress.

97. The conduct of Defendant McCord described herein was the conduct of a narcissistic, sadistic person who takes pleasure in the suffering he causes to others he perceives to be weaker than himself, and is beyond the bounds of human decency and not to be tolerated in civilized society.

V.      **RELIEF SOUGHT**

Plaintiff prays that this Court award plaintiff the following relief:

(i)     Declaratory judgment against the City of Glen Cove declaring that said defendant unlawfully discriminated against plaintiff in the context of her employment because she is a woman; and,

(ii)    Declaratory judgment against Defendant Richard J. McCord declaring that he subjected plaintiff to retaliation on the basis of her political expression in violation of the First Amendment and subjected her to a hostile work environment in violation of the New York State Human Rights Law; and,

(iii)   Compensatory damages to be paid by the City of Glen Cove in an amount to be determined at trial but equating to plaintiff's lost wages due to the reduction in her hours, elimination of her job duties, and termination/constructive termination from both her role as Teen Court Coordinator and job as Deputy City Attorney; and,

(iv)    Compensatory and punitive damages in the amount of Five Million Dollars ($5,000,000.00) to be paid to plaintiff by Richard J. McCord for so egregiously exceeding his judicial authority in an attempt to completely destroy plaintiff's professional and political career and reputation in the manner described in this Complaint, including the campaign of retaliation he launched against her, creation of a hostile work environment, and intentional infliction of emotional distress; and,

(v)     Attorneys' fees and costs; and,

(vi)    Such other and further relief as this Court may deem just and proper.

Dated: April 14, 2021

Respectfully Submitted,

/S/

KRISTINA S. HEUSER (KH3612)