UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
KRISTINA S. HEUSER,

                              Plaintiff,

    -against-

CITY OF GLEN COVE and RICHARD J.
MCCORD,

                           Defendants.
-------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**
21-cv-2018 (JMA)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this employment discrimination and retaliation action, on referral from the Honorable Joan M. Azrack for Report and Recommendation, are: (1) Defendant the City of Glen Cove's (the "City") motion to dismiss *pro se* Plaintiff Kristina S. Heuser's ("Heuser" or "Plaintiff") Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), insufficient service of process pursuant to Rule 12(b)(5), and for failure to state a claim pursuant to Rule 12(b)(6), *see* City of Glen Cove's Motion to Dismiss ("City Motion" or "City Mot."), Docket Entry ("DE") [27]; (2) Defendant Richard J. McCord's ("McCord" or collectively with the City, "Defendants") motion to dismiss the Complaint for insufficient service of process pursuant to Rule 12(b)(5) and for failure to state a claim pursuant to Rule 12(b)(6),[1] *see* Richard

---

[1] Although McCord did not initially move to dismiss the Complaint for insufficient service of process, he asserts Rule 12(b)(5) as an additional ground for dismissal in his Reply Memorandum of Law. *See* Defendant McCord's Reply Memorandum of Law ("McCord Reply"), DE 26-18, at 5-6. The defense of insufficient service of process is generally waived if not asserted by motion under Fed. Civ. R. 12 or in the party's responsive pleading. *Orix*

McCord's Motion to Dismiss ("McCord Motion" or "McCord Mot."), DE [26]; and (3) Plaintiff's motion for leave to amend her Complaint pursuant to Rule 15(a), *see* Plaintiff's Opposition to the City of Glen Cove's Motion to Dismiss ("Opp. to City Mot."), DE [30].

By way of Complaint dated April 14, 2021, Plaintiff commenced this action against Defendants, alleging causes of action for gender-based employment discrimination and a hostile work environment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") against the City, a hostile work environment pursuant to New York State Executive Law § 296 *et seq.* ("NYS Human Rights Law" or the "NYSHRL") against both Defendants, First Amendment retaliation pursuant to 42 U.S.C. § 1983 ("Section 1983") against both Defendants, and a state law claim for intentional infliction of emotional distress against McCord. *See* Complaint ("Compl."), DE [1].  For the reasons set forth herein, the Court respectfully recommends that Defendants' Motions be granted, and that the Complaint be dismissed with prejudice.  Further, the Court recommends that Plaintiff be denied leave to amend her Complaint.

---

*Fin. Servs., Inc. v. Cline*, 369 F. App'x 174, 177 (2d Cir. 2010).  The Court, however, concludes that McCord's statements in his initial motion papers regarding Plaintiff's failure to serve him, *see* Memorandum of Law in Support of Motion to Dismiss ("McCord Mem."), DE [26-5], at 5, are sufficient to put Heuser on notice of this ground for dismissal, and that the defense is not waived.  *See Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 307 (2d Cir. 2002) (noting defendant need not state personal jurisdiction defense "with any rigorous degree of specificity" to preserve it).

# I.    BACKGROUND

## A. **Factual Background**

Unless otherwise indicated, the facts set forth herein are taken from the Complaint and the exhibits attached thereto and are accepted as true for purposes of the instant motions.  Plaintiff Heuser is an attorney admitted to the bar of the State of New York and a former resident of Glen Cove, New York.  Compl. ¶ 4.  The City is a municipal corporation located in Nassau County, New York.  *Id.* at ¶ 5.  McCord is a former elected judge of the Glen Cove City Court.  *Id.* at ¶ 6.

### 1.  Plaintiff's Employment from January 2014 to June 2018

Plaintiff served as Deputy City Attorney for the City of Glen Cove from January 2014 to July 2015 and from March 2016 to June 2019.  *Id.* at ¶ 8.  From July 2015 to March 2016, Heuser left her position in order to run for Glen Cove City Council.  *See id.* at ¶ 9.  The Deputy City Attorney is appointed by the Glen Cove City Council for a one-year term.  *Id.* at ¶ 12.  At the end of her employment with the City, Plaintiff earned $70 per hour and worked approximately 20 hours per week.  *Id.* at ¶ 10.[2]  From the fall of 2013 to June 2018, Heuser also served as the coordinator of the Teen Court program, for which she received additional compensation as an independent contractor.  *See id.* at ¶¶ 7, 11, 35.

From 2014 to 2018, the Glen Cove City Court was in session every Tuesday and Wednesday.  *Id.* at ¶ 13.  McCord presided over the Tuesday sessions and another

---

[2] Plaintiff also alleges that prior to her resignation she was the lowest paid attorney of all those retained by the City – whether as employees or independent contractors.  *Id.* at ¶ 85.  All other attorneys were allegedly paid between $195 and $225 per hour, while Heuser was paid $70 per hour.  *Id.* at ¶ 86.

judge presided over the Wednesday sessions.  *Id.* at ¶ 15.  Plaintiff appeared in Glen Cove City Court as an attorney regularly between January 2014 and summer 2018, where "[b]oth judges routinely complimented her, as did her superiors and other City officials."  *Id.* at ¶ 16.

### 2.  Plaintiff's Decision Not to Sign McCord's Reelection Petition

In and around summer of 2018, McCord sought reelection to his position as a Glen Cove City Court judge.  *Id.* at ¶ 18.  McCord is a member of the Republican party, and Heuser was a member of the Glen Cove Republican Committee.  *See id.* at ¶¶ 18-19.  Committee members typically assist in seeking signatures for the designating petitions of Republican candidates, such that they can appear on the ballot.  *Id.* at ¶ 19.  As a result of McCord's support for candidates that ran against Plaintiff and her allies in previous elections, Heuser chose not to sign his petition or otherwise seek signatures for him.  *Id.* at ¶ 20.  Upon learning of Plaintiff's unwillingness to sign his petition, McCord directed an unidentified attorney to approach Heuser in court and request that she sign the petition.  *See id.* at ¶¶ 21-23.  Heuser responded that she would "have to think about it," to which the unidentified attorney replied that Plaintiff was being "stupid" and "making a career decision."  *Id.* at ¶¶ 24-25.  He informed Heuser that McCord had directed him to present Heuser with the petition and that McCord "was watching."  *Id.* at ¶ 26.

Thereafter, Plaintiff alleges that there were changes to McCord's conduct in court and his treatment of her.  On or about July 20, 2018, McCord challenged Heuser in open court regarding the City's practice of entering into dispositions with

individuals charged with building and housing code violations. *See id.* at ¶ 28. McCord stated that the City's practice was unconstitutional, and he would not honor the memoranda of conditional plea bargains that the City had negotiated. *Id.*

### 3. Plaintiff's Replacement as Teen Court Coordinator

Around this same time, Plaintiff was contacted by a representative of the New York State Division of Criminal Justice Services ("DCJS") regarding the renewal of a grant for the Teen Court program. *See id.* at ¶ 30. The prior year, the Teen Court program received a grant from DCJS for the first time, and Heuser assisted the City Attorney in preparing the administrative paperwork. *See id.* at ¶ 29. Plaintiff attempted to schedule a meeting with the DCJS representative and the City Attorney, but the representative informed Heuser that McCord had reached out to her directly to schedule the meeting. *Id.* at ¶ 31. McCord later told Plaintiff that her presence was not needed at the meeting. *Id.* at ¶ 32. Heuser alleges that McCord replaced her as coordinator of the Teen Court program with the unidentified attorney that asked her to sign McCord's reelection petition. *See id.* at ¶ 33.

Pursuant the prior grant, Plaintiff was compensated for serving as coordinator of the Teen Court program. *See id.* at ¶ 35. The prior grant expired on March 31, 2018, but Heuser worked on the program until June 2018, when McCord allegedly replaced her. *See id.* Plaintiff contends she was entitled to compensation for her work as coordinator from April 1, 2018 to June 30, 2018, but McCord had instructed the City Attorney not to pay her. *See id.* at ¶¶ 35-36. Following a meeting with McCord, the Chief Clerk of the Glen Cove City Court, and the Glen Cove Republican

Executive Leader, Plaintiff agreed to accept a reduced payment amount. *See id.* at ¶¶ 37-38. Although McCord had agreed to arrange for Heuser's payment with DCJS, Plaintiff only received the funds after she demanded payment from the City's finance department. *See id.* at ¶¶ 38, 41.

### 4. Plaintiff's Remaining Employment as Deputy City Attorney and Resignation

At this same time – the summer of 2018 – McCord began directing his clerk to call all cases handled by Heuser at the beginning of each court session. *See id.* at ¶ 43. After all such cases were complete, McCord would tell Plaintiff, "City, you're excused." *Id.* at ¶ 44. Previously, McCord required Heuser to remain in court for the full day's session and would address her by name. *See id.* at ¶¶ 43-44. Plaintiff learned that McCord had then bragged about reducing Heuser's hours. *Id.* at ¶ 45. The City Comptroller informed Plaintiff that McCord sought access to Heuser's time sheets, which the City Attorney later gave to McCord. *See id.* at ¶¶ 47-48. Plaintiff alleges that McCord demanded that Heuser be fired, and later requested that she not be reappointed to her position for the following year. *See id.* at ¶¶ 50-51. Despite these efforts, Plaintiff remained in her position. *See id.* at ¶ 52.

Sometime thereafter, McCord ordered the Glen Cove City Police Department to make all tickets for City Code violations returnable on Wednesdays rather than Tuesday, as had been the prior practice. *Id.* at ¶ 53. Heuser alleges that this had the effect of cutting her hours by half, given that all of her cases were now to be heard on Wednesdays only. *See id.* at ¶¶ 52, 55. Further, the term of the judge that presided over City Court on Wednesdays expired at the end of 2018. *Id.* at ¶ 56. As a result,

court sessions were not held on Wednesdays for some time, and Plaintiff did not appear in court at all. *See id.* When Heuser inquired as to the status of her cases, the City Attorney provided excuses, including that the cases were being held in abeyance until a new judge was appointed. *See id.* at ¶ 57. Plaintiff later learned that the City Attorney was handling these cases himself during this time period. *See id.* at ¶ 59.

On one occasion, Heuser learned that a lawsuit she had assisted a resident in filing was scheduled for an appearance on a Tuesday. *See id.* at ¶ 60. Plaintiff appeared in court to assist the resident with the appearance, as had been her general practice. *See id.* Upon arrival that morning, consistent with her routine prior to summer 2018, Heuser conferenced cases involving the City in the hallway near the courtroom. *See id.* at ¶ 61. When McCord learned of Plaintiff's presence, he directed court personnel to not allow her to enter the courtroom. *See id.* at ¶ 62. The City Attorney told Heuser that he would handle all the matters involving the City on the record. *See id.*

Sometime thereafter, a new judge was appointed to preside over Glen Cove City Court on Wednesdays. *Id.* at ¶ 64. On the following Wednesday – five months since she last appeared in court – Plaintiff arrived at the courtroom and sat at her usual desk. *See id.* at ¶¶ 64-65. McCord entered the courtroom and shouted, "clear the well." *Id.* at ¶ 65. Heuser was the only attorney sitting in the well, so she stood up and sat in the area of the courtroom designated for the public. *See id.* Plaintiff alleges that she was humiliated and denigrated every time she appeared before

McCord from the summer of 2018 to June 2019.  *See id.* at ¶ 66.  Further, Heuser asserts that other attorneys noticed McCord's treatment of her and would ask what she had done to anger McCord.  *Id.* at ¶ 67.

Alleging that her role was effectively eliminated and feeling overcome with stress and emotional exhaustion, Heuser resigned her position as Deputy City Attorney, effective June 2019.  *See id.* at ¶ 69.  The City Attorney initially offered to retain Plaintiff as an independent contractor to handle certain litigation on behalf of the City, but later failed to retain her.  *See id.* at ¶¶ 70, 71.

### B. <u>Procedural History</u>

On December 28, 2019, Heuser filed a complaint of discrimination based on sex/gender and retaliation with the New York State Division of Human Rights ("NYSDHR").  *Id.* at ¶ 72.  On September 9, 2020, NYSDHR dismissed the complaint based on a lack of probable cause that Defendants engaged in the discriminatory practices alleged.  *See* Ex. C to Compl.  The Equal Employment Opportunity Commission adopted NYSDHR's findings and issued a right-to-sue letter on January 13, 2021.  *See* Compl. ¶ 74.  Plaintiff commenced this action against Defendants by way of Complaint dated April 14, 2021.  *See generally id*.  Summonses were issued as to both Defendants on April 21, 2021.  *See* DEs [5]-[6].  A copy of the docket sheet that was mailed to Heuser was returned to the Court as undeliverable on April 28, 2021, and the clerk's office instructed Plaintiff to promptly update her address of record.  *See* Letter from *Pro Se* Department to Kristina Heuser dated April 28, 2021, DE [8].

Given that Heuser had not updated her address or filed proof of return of service of the Summons and Complaint as to either Defendant, on January 6, 2022 Judge Azrack issued an order to show cause why this action should not be dismissed for failure to prosecute. *See* Electronic Order dated Jan. 6, 2022. On January 19, 2022, Plaintiff filed a declaration in response to the Court's order, attaching proof that the City and McCord were served on January 14, 2022 and January 18, 2022, respectively. *See* DE [9]; *see also* DE [13].

The McCord Motion and the City Motion were filed on December 27, 2022 and December 28, 2022, respectively, and were referred to this Court for Report and Recommendation on May 2, 2023. *See* DEs [26], [27]; Order Referring Motions. Heuser opposed both motions and in opposition to the City Motion, sought leave to amend the Complaint to assert additional facts in support of her First Amendment retaliation claim and to bring a cause of action pursuant to the Equal Pay Act, 29 U.S.C. § 206, against the City. *See* Opp. to City Mot. at 13-14; *see also* Memorandum of Law in Opposition to McCord's Motion to Dismiss ("Opp. to McCord Mot."), DE [26-7]. For the reasons set forth below, the Court respectfully recommends that Defendants' Motions be granted and that all claims against both Defendants be dismissed with prejudice. The Court further recommends that Plaintiff be denied leave to amend her Complaint.

## II. LEGAL STANDARD

### A. <u>Fed. R. Civ. P. 12(b)(1)</u>

"It is axiomatic that federal courts are courts of limited jurisdiction and may not decide cases over which they lack subject matter jurisdiction." *Lyndonville Sav.*

*Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000). To that end, "[d]etermining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In deciding a motion to dismiss for lack of subject matter jurisdiction, "a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001).

### B. <u>Fed. R. Civ. P. 12(b)(5)</u>

Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of a complaint for insufficient service of process. Fed. R. Civ. P. 12(b)(5). "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 Fed. App'x 202, 203 (2d Cir. 2010) (summary order); *see Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016); *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003). "Because a Rule 12(b)(5) motion implicates 'whether [the court] has jurisdiction,' the court 'looks to matters outside the complaint.'" *Hines v. Roc-A-Fella Records, LLC*, No. 10-cv-4587, 2020 WL 1888832, at *1-2 (S.D.N.Y. Apr. 16, 2020) (quoting *Cassano*, 186 F. Supp. 3d at 320). "In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). "Technical errors in a summons

10

generally do not render service invalid," but "where the error actually results in prejudice to the defendant or demonstrates a flagrant disregard of Rule 4, service will be considered invalid and amendment need not be allowed." *Id.* at 65. If a defendant is not properly served "within 90 days after the complaint is filed," the Court "must" dismiss the action without prejudice against the unserved defendant(s), "or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *See id.*

"The plaintiff bears the burden of proof in showing that it had good cause in not timely serving the defendant." *George v. Professional Disposables Intl., Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) (quoting *AIG Managed Mkt. Neutral Fund v. Askin Capital Mgmt.*, 197 F.R.D. 104, 108 (S.D.N.Y. 2000)). To establish good cause, "a plaintiff must demonstrate that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control." *Spinale v. United States*, No. 03-cv-1704, 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005), *aff'd sub nom. Spinale v. Ball*, 352 Fed. App'x 599 (2d Cir. 2009); *accord George*, 221 F. Supp. 3d at 432; *Feingold v. Hankin*, 269 F. Supp. 2d 268, 276-77 (S.D.N.Y. 2003). "Attorney error does not constitute good cause under Rule 4(m)." *Counter Terrorist Grp. U.S. v. New York Mag.*, 374 Fed. App'x 233, 235 (2d Cir. 2010) (summary order). Similarly, good cause does not exist where the plaintiff, upon learning that a defendant was not properly served, fails either to serve that defendant again within the time remaining under Rule 4(m) or to seek additional time within which to do

11

so. *Reed Holdings Inc. v. O.P.C. Corp.*, 122 F.R.D. 441, 444-45 (S.D.N.Y. 1988); *see Cassano*, 186 F. Supp. 3d at 322 (plaintiffs' failure to ask for more time "weighs against" a finding of good cause); *AIG*, 197 F.R.D. at 108 (in determining good cause, court should consider not only whether plaintiff was initially diligent but also whether it moved "for an extension of time to serve the defendant" when its initial efforts failed (citing *Gordon v. Hunt*, 835 F.2d 452, 453 (2d Cir. 1987))).

Even in the absence of good cause, "a court has the discretion to grant an extension of time to serve the defendant." *Hahn v. Off. & Pro. Emps. Int'l Union, AFL-CIO*, 107 F. Supp. 3d 379, 382 (S.D.N.Y. 2015) (citing *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007)). "To obtain a discretionary extension absent a showing of good cause, 'the plaintiff must ordinarily advance some colorable excuse for neglect.'" *Cassano*, 186 F. Supp. 3d at 323 (quoting *Zapata*, 502 F.3d at 198). Courts then "balance justifiable excuses offered by the plaintiff, the length of the delay, and any prejudice to either party." *Spinale*, 2005 WL 659150, at *4.

### C. Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1960 (2007)). A claim is considered plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at

1949.   Nevertheless, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"   *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a court must 'accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.'"   *U.S. ex rel. Siegel v. Roche Diagnostics Corp.*, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting *LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009)).   "[T]hreadbare recitals of the elements of a cause of action," however, that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal.   *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted); *see Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").   "The court's consideration on a motion under Fed. R. Civ. P. 12(b)(6) is limited to the factual allegations in the complaint; documents incorporated by reference into the complaint; matters of which judicial notice may be taken; and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit."   *Messina v. Mazzeo*, 854 F. Supp. 116, 128 (E.D.N.Y. 1994) (citing *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *see Burton v. Am. Fed'n of Gov't Employees (AFGE) 1988*, No. 11-cv-1416, 2012 WL 3580399, at *5 (E.D.N.Y. Aug. 17, 2012).

### D. **Fed. R. Civ. P. 15(a)**

Pursuant to Fed. R. Civ. P. 15(a), courts have discretion to allow parties to amend their pleadings "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("Under Fed. R. Civ. P. Rule 15(a), leave to amend shall be freely given when justice so requires."); *Amaya v. Roadhouse Brick Oven Pizza, Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) ("A court should freely give leave when justice so requires, and such leave is in the court's discretion.") (internal quotation omitted).  Leave to amend should only be denied "if there is delay, bad faith, futility, or prejudice to the non-moving party." *Hosking v. New World Mortg., Inc.*, 602 F. Supp. 2d 441, 445 (E.D.N.Y. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).

### E. *Pro Se* **Pleadings**

It is well-established that pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173, 176 (1980); *see Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations omitted).  Where an attorney is proceeding *pro se*, however, his pleadings are not entitled to the "special consideration which the courts customarily grant to *pro se* parties." *Bazadier v. McAlary*, 464 Fed. App'x 11, 12 (2d Cir. 2012) (internal quotation marks and citation omitted).  As noted above, Plaintiff is an attorney and formerly served as the Deputy City Attorney for the City of Glen Cove.  *See* Compl. ¶¶ 4, 8.  Accordingly, her

14

pleadings are not entitled to "special consideration" by reason of her *pro se* status. *Bazadier*, 464 Fed. App'x at 12.

## III.   DISCUSSION

Both Defendants seek dismissal of the Complaint in its entirety.   For the reasons set forth below, the Court respectfully recommends that City's Motion brought pursuant to Rule 12(b)(1) be granted, that those portions of Defendants' Motions brought pursuant to Rule 12(b)(5) be granted and that all claims against both Defendants be dismissed with prejudice.   The Court further recommends that Defendants' Motions brought pursuant to Rule 12(b)(6) also be granted.   Lastly, the Court recommends that Plaintiff be denied leave to amend her Complaint.

### A.   **The City's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)**

Plaintiff asserts a hostile work environment claim under the NYSHRL against both Defendants.   *See* Compl. ¶¶ 93-94.   The City argues that any claims pursuant to NYSHRL are barred by the election of remedies doctrine and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).   *See* City Mem. at 13-15.   The Court agrees.

Pursuant to NYSHRL § 297(9), a plaintiff who has previously filed a complaint with NYSDHR may not file a lawsuit in federal court based on the same underlying conduct.   *DeBerry v. Brookdale Univ. Hosp. & Med. Ctr.*, 11 F. Supp. 3d 387, 392 (E.D.N.Y. 2014); *see Philbert v. City of New York*, No. 21-cv-3119, 2022 WL 94574, at *8-*9 (S.D.N.Y. Jan. 7, 2022).   This election of remedies provision creates a jurisdictional bar to such claims.   *DeBerry*, 11 F. Supp. 3d at 392.   The bar applies where "substantially the same facts are involved" and "merely adding some additional facts and/or re-labeling the claim will not prevent the application of the

15

doctrine of election of remedies." *Id.* Courts generally recognize only two exceptions to this jurisdictional bar for: (1) complaints filed with NYSDHR but dismissed for administrative convenience, and (2) complaints filed with NYSDHR by the Equal Employment Opportunity Commission. *See Alston v. Microsoft Corp.*, 08-cv-3547, 2009 WL 1116360, at *4 (S.D.N.Y. Apr. 27, 2009); *see* N.Y. Exec. Law § 297(9).

Here, Plaintiff's complaint to the NYSDHR alleged the same facts as the Complaint filed with this Court, *i.e.*, that the City subjected her to a hostile work environment and McCord retaliated against her based on her failure to support his reelection campaign. *See* Ex. B to Compl. Moreover, Heuser filed her claim individually and it was not dismissed for administrative convenience. *See* Compl. ¶¶ 72-73. Further, the NYSDHR issued a finding of no probable cause. *See* Ex. C to Compl at 1. Accordingly, and because this argument applies with equal force to both Defendants, the Court recommends that the City's Motion be granted on this basis and that Plaintiff's NYSHRL claim against both Defendants be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## B. Defendants' Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(5)

Both Defendants seek dismissal of the Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(5) based on Plaintiff's failure to effectuate service in a timely manner under Fed. R. Civ. P. 4. *See* City. Mem. at 4-5; McCord Reply at 5-6. For the reasons set forth below, the Court recommends that Defendants' motions to dismiss be granted on this basis and that Heuser's remaining claims be dismissed with prejudice.

16

Under Rule 4(m), a plaintiff has 90 days from the filing of a complaint to effectuate service. Fed. R. Civ. P. 4(m). As set forth above, Plaintiff bears the burden of proving adequate service. *See Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010); *see Vidurek v. Koskinen*, 789 Fed. App'x 889, 893 (2d Cir. 2019) (quoting *Meilleur v. Strong*, 682 F.3d 56, 61 (2d Cir. 2012)) ("[W]e generally will not reverse a district court's dismissal of an action for lack of service unless the appellant can advance some colorable excuse for neglect."). Heuser must meet this burden by making a *prima facie* showing of proper service through specific factual allegations and any supporting materials." *Sikhs for Justice v. Nath*, 850 F. Supp. 2d 435, 440 (S.D.N.Y. 2012) (internal citations and quotations omitted).

Applying these standards, the Court concludes that Plaintiff has not established good cause for her failure to timely serve Defendants. The parties do not dispute that Heuser did not serve the Complaint within 90 days of filing. *See* City Mem. at 5; McCord Mem. at 5; Opp. to City Mot. at 2. Plaintiff served Defendants with the Complaint approximately nine months after the Complaint was filed – six months after the deadline prescribed by Rule 4. *See* DE [13]. Service was therefore untimely. Moreover, in response to the January 6, 2022 Order to Show Cause issued by Judge Azrack, Plaintiff failed to demonstrate that "service could not be made due to exceptional circumstances beyond . . . her control." *Spinale*, 2005 WL 659150, at *3). Heuser instead asserted that she "did not know that the Summonses had been issued" and "did not make this [action] a top priority." *See* Declaration of Plaintiff in

Response to Order to Show Cause, DE [9], at ¶ 10.  Plaintiff has therefore failed to meet her burden to establish good cause for her failure to timely serve Defendants.

As noted above, however, even in the absence of good cause, a court "has the discretion to grant an extension of time to serve the defendant." *Hahn*, 107 F. Supp. 3d at 382.  Balancing the excuses offered by Plaintiff, the length of the delay, and prejudice to both parties, the Court declines to exercise its discretion to grant Heuser an extension.  Initially, Plaintiff did not offer a reason for her failure to timely serve Defendants other than her admission that she "did not make this [action] a top priority." *See* DE [9] at ¶ 10.  Moreover, Heuser is an attorney, rendering her claim that she "did not know the Summonses had been issued," difficult to excuse. *Id.* Finally, the length of the delay – six months after the deadline under Rule 4(m) – weighs against granting Plaintiff a discretionary extension.  For all of these reasons, the Court respectfully recommends that Defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(5) be granted and that Heuser's remaining claims be dismissed with prejudice.  Notwithstanding this recommendation, the Court still evaluates whether Plaintiff's individual causes of action should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

### C.  <u>Defendants' Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)</u>

#### 1. <u>Judicial Immunity</u>

McCord seeks dismissal of the Complaint against him in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that he is immune from suit based on actions taken in his capacity as a judge. *See Rios v. Third Precinct Bay Shore,* No. 08-cv-

4641, 2009 WL 2601303, at *1 (E.D.N.Y. Aug. 20, 2009) (citing *State Employees Bargaining Agent Coalition v. Rowland,* 494 F. 3d 71, 77 n. 4 (2d Cir. 2007)) (noting motions to dismiss on grounds of immunity from suit "are properly analyzed under Rule 12(b)(6)"); *see* McCord Mem. at 23.  The Court agrees.

Judges are immune from liability for damages for acts committed within the scope of their jurisdiction.  *See Mireles v. Waco*, 502 U.S. 9, 11-12, 112 S. Ct. 286, 288 (1991) (finding that judges have absolute immunity from suits for damages arising out of judicial acts performed in their judicial capacities); *see Stump v. Sparkman*, 435 U.S. 349, 359, 98 S. Ct. 1099, 1106 (1978); *Fields v. Soloff*, 920 F.2d 1114, 1119 (2d Cir. 1990).  A judge will not be deprived of this immunity even when the action was taken in error, done maliciously or exceeded his authority.  *See Stump*, 435 U.S. at 356-58, 98 S. Ct. at 1104.  This absolute immunity is necessary to permit judges to act independently and without fear of consequences to themselves.  *Stump*, 435 U.S. at 355, 98 S. Ct. at 1104.  To that end, "judicial immunity is not overcome by allegations of bad faith or malice." *Mireles*, 502 U.S. at 11, 112 S. Ct. at 288.

Judicial immunity, however, does not extend to actions taken in an administrative capacity, such as the hiring and firing of employees.  *Forrester v. White*, 484 U.S. 219, 229, 108 S. Ct. 538, 545 (1988) (finding that demotion and discharge of a probation officer was an administrative, rather than a judicial act). Further, immunity from money damages will be denied where a judge:  (i) acts in the clear absence of all jurisdiction and (ii) knew or must have known that he was acting in such a manner.  *Tucker v. Outwater*, 118 F.3d 930, 936 (2d Cir. 1997).  The first

element is an objective inquiry: "that no reasonable judge would have thought jurisdiction proper." *Maestri v. Jutkofsky*, 860 F.2d 50, 53 (2d Cir. 1988). The second element is subjective, concerning whether "the judge whose actions are questioned actually knew or must have known" of the jurisdictional defect. *Id*.

Applying the above standards, the Court concludes that judicial immunity bars Plaintiff's claims against McCord. The allegations against Defendant concern actions taken while presiding over the Glen Cove City Court. For example, Heuser alleges that McCord "challenged plaintiff in open court" regarding the City's practice of entering into dispositions with individuals charged with building and housing code violations. Compl. ¶ 28. Other allegations concern Defendant's decision to hear Plaintiff's cases at the beginning of the court's session, directing the Glen Cove Police Department to make tickets for City Code violations returnable on certain days, and declining to refer to Heuser by name on the record, all in an alleged effort to limit her pay. *See id.* at ¶¶ 43-45, 52-55. These alleged actions fall within McCord's jurisdiction as judge of the Glen Cove City Court, however, and are therefore shielded by judicial immunity. *See Mireles*, 502 U.S. at 11, 112 S. Ct. at 288. With respect to Defendant's decision to replace Plaintiff as Teen Court coordinator, Heuser argues that this was an administrative, rather than judicial act, and therefore unprotected. *See* Opp. to McCord Mot. at 4. Courts have concluded, however, that actions taken to administer court-annexed programs, such as the Teen Court, fall within the judicial function and therefore are not subject to challenge. *See Stoudymire v. N.Y.S. Div. of Hum. Rts.*, 36 Misc. 3d 919, 923, 949 N.Y.S.2d 611 (Sup. Ct. 2012), *aff'd sub*

*nom. Stoudymire v. New York State Div. of Hum. Rts.*, 109 A.D.3d 1096, 971 N.Y.S.2d 713 (2013) (determining that a judge was immune from suit concerning decision to replace substance abuse treatment provider for treatment court program). Accordingly, the Court further recommends that the McCord Motion be granted pursuant to Rule 12(b)(6) and that all claims against him be dismissed with prejudice.

2.   Discrimination Based on Sex/Gender in Violation of Title VII

Plaintiff asserts claims against the City pursuant to Title VII for:   (1) discrimination in employment based on sex/gender and (2) a hostile work environment.  *See* Compl. ¶¶ 77-87; 93-94.  The Court considers each claim in turn.

a.   *Employment Discrimination Based on Sex/Gender*

Heuser alleges that she was discriminated against on the basis of her gender, resulting in her constructive discharge.  *See id.* at ¶¶ 77-87.  Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [the] . . . terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."  42 U.S.C. § 2000e–2(a)(1).

A claim under Title VII is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).  *See Domenech v. New York City Employees' Ret. Sys.*, 564 F. Supp. 3d 126, 135 (E.D.N.Y. 2021) (citing *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003)).  Under this framework, a plaintiff has the initial burden to establish a *prima facie* case of discrimination. *Domenech,* 564 F. Supp 3d at 135; *see McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S. Ct. at 1824.  A plaintiff can establish a *prima facie* case by alleging that he or she:

"(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *East v. Roosevelt Union Free Sch. Dist.*, No. 19-cv3709, 2020 WL 13753159, at *6 (E.D.N.Y. July 31, 2020) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F. 3d 72, 83 (2d Cir. 2015)).  If all elements are met, the burden shifts to the employer to offer "a legitimate, non-discriminatory rationale for its actions . . . ." *Domenech,* 564 F. Supp 3d at 135.  Then, plaintiff must "show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination."  *Id* (internal quotation marks and citations omitted).

### i.   The City's Liability for McCord's Actions

As a threshold matter, Plaintiff purports to hold the City liable for the actions of McCord – an elected judge not employed by the City – for the purposes of her Title VII claims.  *See* Compl. ¶ 18; *see also* Opp. to City Mot. at 6-7.  The Second Circuit has held that "the conduct of certain non-employees may be imputed to the employer where (1) the employer exercises a 'high degree of control over the behavior' of the non-employee, and (2) the employer's 'own negligence' permits or facilitates that non-employee's discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 38–39 (2d Cir. 2019) (quoting *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013)).  Although the Complaint does not allege who employed McCord, the Court notes that while serving as a judge of the Glen Cove City Court, he was an employee of New York state, not the City.  *See Donlon v. City of Hornell*, No. 23-cv-6096, 2023 WL 2236490,

at *3 (W.D.N.Y. Feb. 27, 2023) (concluding that city judges are employees of New York state); *see* N.Y. Judiciary Law § 39(6) ("[A]ll justices [and] judges . . . of the unified court system . . . shall be employees of the state of New York."); N.Y. Uniform City Ct. Act § 102 ("[E]ach such [city] court shall be a part of the unified court system for the state."). Moreover, there are no allegations in the Complaint to suggest that the City had any control over McCord's actions. McCord was elected to his role as judge of the Glen Cove City Court, and there are no allegations that he was supervised by or under the City's control. *See* Compl. ¶ 18. Accordingly, McCord's actions cannot be imputed to the City for the purposes of Plaintiff's Title VII claims.

## ii.   Inference of Discrimination

Moreover, Heuser fails to plead facts supporting an inference of discrimination. Under Title VII, a plaintiff must show that the adverse employment action occurred under circumstances suggesting an interference of discrimination. "Naked assertions of discrimination without any specific allegation of a causal link between the defendants' conduct and the plaintiff's membership in a protected class are too conclusory to withstand a motion to dismiss." *Durand v. Excelsior Care Grp. LLC*, No. 19-cv-2810, 2020 WL 7246437, at *5 (E.D.N.Y. Dec. 9, 2020) (internal quotation marks omitted); *see Jackson v. Cnty. of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011). A plaintiff may "demonstrate circumstances giving rise to an inference of discrimination by alleging that she was treated less favorably than similarly situated employees of [the opposite gender]." *Sosa v. New York City Dep't of Educ.*, 368 F. Supp. 3d 489, 514 (E.D.N.Y. 2019) (quoting *Brown v. Dalkin Am., Inc.*, 756 F.3d 219,

229 (2d Cir. 2014)).  To do so, a plaintiff must show that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself," including "whether the plaintiff and those she maintains were similarly situated were subject to the same workplace standards." *Pattanayak v. Mastercard Inc.*, No. 22-1411, 2023 WL 2358826, at *2 (2d Cir. Mar. 6, 2023) (quoting *Brown,* 756 F.3d at 230).

Here, there are no allegations that any of the City's actions were taken because Heuser is a woman.  The Complaint is further devoid of allegations concerning how other, similarly situated male attorneys were treated by the City.  Although Plaintiff asserts that "Defendants would not have treated plaintiff this way if she were not a woman," Compl. ¶ 83, she alleges no facts to support this conclusion.  Accordingly, Heuser has failed to plead an employment discrimination claim under Title VII, and the Court recommends that this claim be dismissed.

b. *Hostile Work Environment*

Plaintiff further asserts a hostile work environment claim pursuant to Title VII based on the City's failure to address McCord's conduct.  *See* Compl. ¶¶ 77-87.  To state a claim for hostile work environment under Title VII, a "plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected class]." *Boyar v. Yellen*, No. 21-507, 2022 WL 120356, at *2 (2d Cir. Jan.

24

13, 2022) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).  Courts should focus on the "totality of the circumstances" in analyzing a hostile work environment claim, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance.'" *Cherry v. New York City Hous. Auth.*, 564 F. Supp. 3d 140, 182 (E.D.N.Y. 2021) (quoting *Boonmalert v. City of New York*, 721 F. App'x 29, 33 (2d Cir. 2018)).

Here, Plaintiff has failed to sufficiently allege an actionable hostile work environment.  As noted above, Heuser has failed to include any allegations to suggest that her experiences occurred because she is a woman.  Accordingly, the Court recommends that this claim be dismissed as well.

### 3. First Amendment Retaliation

The City moves to dismiss Heuser's Section 1983 First Amendment retaliation claim based on a failure to plead municipal liability under *Monell v. Dep't of Social Servs. of City of New York,* 436 U.S. 658, 98 S. Ct. 2018 (1978), and on the merits.  *See* City Mem. at 12-13.  Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State… subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured….

42 U.S.C. § 1983.

Although Section 1983 does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v.*

*James*, 13 F.3d 515, 519 (2d Cir. 1993). To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Skates v. Inc. Vill. of Freeport*, 265 F. Supp. 3d 222, 234 (E.D.N.Y. 2017) (citing 42 U.S.C. § 1983). "The traditional definition of acting under color of state law requires that the defendant . . . exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Alford v. City of New York*, 413 F. Supp. 3d 99, 113 (E.D.N.Y. 2018) (quoting *Kia P. v. McIntyre*, 235 F.3d 749, 755 (2d Cir. 2000)).

### a. Failure to Allege Municipal Liability

The Court recommends dismissal of Plaintiff's Section 1983 claim against the City because the Complaint fails to properly allege municipal liability. A municipality may not be held liable under Section 1983 on a *respondeat superior* theory of liability. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036 (1978); *see Genovese v. Town of Southampton*, 921 F.Supp. 2d 8, 24 (E.D.N.Y. 2013) ("[A] municipal entity may only be held liable where the entity itself commits a wrong.") (internal citation omitted). To state a claim for municipal liability, a plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Authority of New York & New Jersey*, 615 F.3d 129, 140 (2d Cir. 2010) (citing *Wray v. City of New York*, 490 F.Supp. 3d 241, 264 (E.D.N.Y. 2015)), *reconsideration denied*, No. 12-cv-4463, 2016 WL 264930 (E.D.N.Y. Jan. 21 2016), *aff'd*, No. 16-cv-490, 2017

WL 440131 (2d Cir. Feb. 1, 2017) (citing *Monell*, 426 U.S. at 690-91, 98 S. Ct. at 2036); *Lamont v. City of New York*, No. 12-cv-2478, 2014 WL 4829328, at *7 (E.D.N.Y. Sept. 29, 2014).

Although Section 1983 does not require application of a heightened pleading standard to allege municipal liability, a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1937 (alteration in original) (internal quotation and citations omitted); *see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168, 113 S. Ct. 1160, 1163 (1993). Thus, Plaintiff cannot simply allege the existence of a policy and/or custom without putting forth "facts tending to support, at least circumstantially, an inference that a municipal policy or custom exists." *Homere v. Inc. Vill. of Hempstead*, 322 F. Supp. 3d 353, 370 (E.D.N.Y. 2018) (quoting *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012)).

Here, while the Complaint purports to assert a First Amendment retaliation claim against the City, it is "is devoid of any factual allegations from which it may reasonably be inferred that a municipal policy or custom caused the conduct of which [Heuser] complains." *Whitenack v. Armor Med.*, No. 13-cv-2071, 2014 WL 5502300, at *8 (E.D.N.Y. Oct. 30, 2014). Plaintiff merely asserts that "defendants conspired together to retaliate against plaintiff" for engaging in allegedly protected speech. Compl. ¶ 91. Nor does her allegation that the City "took these actions against plaintiff to make an example of her and chill similar expression by others" satisfy the requirements of *Monell*. *Id.* at ¶ 92. Accordingly, the Court recommends that the

27

City's Motion be granted with respect to Plaintiff's First Amendment retaliation claim for failure to plead *Monell* liability.

### b. *First Amendment Retaliation Claim on the Merits*

For sake of a more complete record, the Court also considers whether Heuser's Section 1983 claim is otherwise sufficient. Where, as here, a public employee brings a retaliation claim, the plaintiff must prove that: "(1) [she] engaged in constitutionally protected speech because [she] spoke as [a] citizen[ ] on a matter of public concern; (2) [she] suffered an adverse employment action; and (3) the speech was a motivating factor in the adverse employment decision." *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008) (internal citations omitted). "[T]he causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action." *Kohutka v. Town of Hempstead*, 994 F.Supp. 2d 305, 318 (E.D.N.Y. 2014) (quoting *Anemone v. Metropolitan Transp. Authority*, 410 F. Supp. 2d 255, 267 (S.D.N.Y. 2006)).

The Supreme Court, however, has created an exception to First Amendment protection for "'policy-making and confidential employees' for whom political viewpoints are permissible employment criteria and who, accordingly, 'may be discharged by reason of political affiliation, political beliefs, ideological viewpoints or partisan activity.'" *Hommel v. City of Long Beach,* No. 13-cv-3261, 2014 WL 1010654, at *2 (E.D.N.Y. Mar. 14, 2014) (quoting *Kaluczky v. City of White Plains*, 57 F. 3d 202, 208 (2d Cir. 1995)). "[T]he ultimate inquiry is not whether the label 'policymaker' or

28

'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518, 100 S. Ct. 1287 (1980). The Second Circuit articulated a number of factors that indicate whether a public employee falls within this exception, including, *inter alia*, whether they are authorized to speak in the name of policymakers, are perceived as a policymaker by the public, and are responsive to partisan politics and political leaders. *See Hommel*, 2014 WL 1010654, at *3 (citing *Vezzetti v. Pellegrini*, 22 F. 3d 483, 486 (2d Cir. 1994)).

Applying the above standards, Plaintiff's First Amendment retaliation claim fails. Although Heuser alleges that she engaged in constitutionally protected speech, her role as Deputy City Attorney falls within the exception articulated in *Kaluczky* and *Branti*. Plaintiff was appointed to her position by the Glen Cove City Council. *See* Compl. ¶ 12. Apart from noting that she prosecuted violations of the City Code, the Complaint is vague with respect to Heuser's job responsibilities. *Id.* at ¶¶ 28, 53. Based on this vague description and her title, however, Plaintiff's role is similar to those of other government attorneys that courts in this Circuit have found to "inherently demand[] political loyalty" and therefore not subject to First Amendment protection. *See Hommel*, 2014 WL 1010654, at *5 (Assistant Corporation Counsel for the City of Long Beach not subject to First Amendment protection where plaintiff litigated cases on behalf of the city); *see Bavaro v. Pataki*, 130 F. 3d 46, 50 (2d Cir. 1997) (holding that attorneys for New York State Department of Health were not

protected by the First Amendment); *Gordon v. Cty. of Rockland*, 110 F. 3d 886, 890 (2d Cir. 1997) (Assistant County Attorney not protected by the First Amendment). Accordingly, Heuser has failed to state a claim for First Amendment retaliation against the City, notwithstanding her failure to plead *Monell* liability.

   D. **Leave to Amend**

   In her opposition to the City's Motion, Plaintiff seeks leave to amend her Complaint, *see* Opp. to City Mot. at 13, but failed to attach a proposed amended complaint. Although such failure can "constitute[] sufficient grounds to deny a motion to amend," when "the movant's papers adequately explain the basis for, and nature of, the proposed amendment . . . the failure to attach a proposed amended complaint . . . is not necessarily fatal." *Rozenzweig v. ClaimFox, Inc.*, 251 F. Supp. 3d 449, 456 (E.D.N.Y. 2017) (quoting *Murray v. N.Y.*, 604 F. Supp. 2d 581, 588 (W.D.N.Y. 2009)). Here, Plaintiff's opposition sets forth the basis of her amendment and states that she seeks to allege "additional facts that would serve to bolster [her] *Monell* claim" and to assert a cause of action pursuant to the Equal Pay Act, 29 U.S.C. § 206. Opp. to City Mot. at 13. As such, the Court concludes that the failure to include a proposed amended complaint is not fatal to Plaintiff's motion. Notwithstanding this conclusion, and for the reasons set forth below, the Court respectfully recommends that Plaintiff's request for leave to amend the Complaint be denied.

   As noted above, leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2). Nevertheless, "a district court may deny leave to amend when . . . amendment would be futile because the problem with the claim 'is

substantive . . . [and] better pleading will not cure it.'" *Reynolds v. City of Mount Vernon*, 14-CV-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).   Here, the Court has recommended that Plaintiff's Complaint be dismissed in its entirety pursuant to Rule 12(b)(5).   No amendment could cure Heuser's failure to timely serve Defendants.   Moreover, all of Plaintiff's potential claims accrued in June 2019 – the time of her resignation – and would therefore time-barred as of the filing of her opposition to the City's Motion on December 28, 2022, where those amendments are first suggested.   *See, e.g., Birch v. City of New York*, 184 F. Supp. 3d 21, 26 (E.D.N.Y. 2016), *aff'd*, 675 F. App'x 43 (2d Cir. 2017) (noting that the statute of limitations for Section 1983 claims is three years); *Santiago v. ACACIA Network, Inc.*, No. 22-CV-228, 2022 WL 6775835, at *6 (S.D.N.Y. Oct. 10, 2022) (noting that the statute of limitations for a willful violation of the Equal Pay Act is three years).   Accordingly, the Court respectfully recommends that Heuser's motion for leave to amend be denied.

## IV.   CONCLUSION

For the reasons set forth herein, the Court respectfully recommends that the Defendants' Motions be granted and that all claims be dismissed with prejudice. Further, the Court recommends that Plaintiff be denied leave to amend her Complaint.

## V.   OBJECTIONS

A copy of this Report and Recommendation is being served on Defendants by electronic filing on the date below.   Defendants are directed to serve a copy of it on *pro se* Plaintiff via first-class mail and promptly file proof of service by ECF.   Any

objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated:     Central Islip, New York
           June 30, 2023

                              /s/ Steven I. Locke
                              STEVEN I. LOCKE
                              United States Magistrate Judge